IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| WILLIAM SCOTT SUTHERLAND,  )<br>  )<br>     Plaintiff,   )<br>  )<br>v.   )<br>  )<br>CAROLYN W. COLVIN,   )<br>**Acting Commissioner of Social**   )<br>**Security,**   )<br>  )<br>     Defendant.   | CIVIL ACTION NO.<br>6:12-cv-3877-AKK |

## MEMORANDUM OPINION

Plaintiff William Scott Sutherland ("Sutherland") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I. Procedural History

Sutherland, whose past relevant experience includes work as a landscape laborer, a loader/unloader, and an installer, filed an application for Title II

disability insurance benefits on March 16, 2010, alleging a disability onset date of March 17, 2009, due to lower back pain. (R. 10, 17, 103). After the SSA denied Sutherland's claim, he requested a hearing before an ALJ. (R. 61-62). The ALJ subsequently denied Sutherland's claim, (R. 7-18), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Sutherland then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

5

testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

## IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Sutherland had not engaged in substantial gainful activity since March 17, 2009, and, therefore, met Step One. (R. 12). Next, the ALJ found that Sutherland satisfied Step Two because he suffered from the severe impairments of "lumbalgia, lumbar

6

degenerative disc disease and ankle neuralgia." *Id*. The ALJ then proceeded to the next step and found that Sutherland failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id.* Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that Sutherland has the residual functional capacity (RFC) to perform "sedentary work as defined in 20 CFR 404.1567(a) except [Sutherland] can only occasional[ly] climb, crouch, crawl, kneel and operate foot controls." (R. 13). In light of his RFC, the ALJ found that Sutherland "is unable to perform any past relevant work." (R. 17). Lastly, in Step Five, the ALJ considered Sutherland's age, education, work experience,[2] and RFC, and determined "there are jobs that exist in significant numbers in the national economy that [Sutherland] can perform." *Id.* Therefore, the ALJ found that Sutherland "has not been under a disability, as defined in the Social Security Act, from March 17, 2009, through the date of this decision." (R. 18).

---

[2] As of the date of the ALJ's decision, Sutherland was 37 years old, had a high school education, and had past relevant medium to heavy work as a landscape laborer, loader/unloader, and installer. (R. 17).

7

V.  Analysis

The court now turns to Sutherland's contentions that the ALJ failed to (1) accord proper weight to his treating physician; (2) assess his impairments in combination; (3) consider the effect of obesity; and (4) properly assess his credibility.  *See* doc. 9 at 7-12.  The court addresses each contention in turn.

A.   The Treating Physician's Opinions

Sutherland contends the ALJ erred because he gave insufficient weight to the opinion his treating physician Dr. Leon Campbell expressed in a deposition taken on September 6, 2011.  (R. 399-414).  In that deposition, Sutherland's attorney recounted a history given to him by Sutherland in an interview.  (R. 408).  The attorney's statement included:

> That on a pain scale of zero to ten that on most of the time [sic], even with meds, he runs at a seven-eight level, never really better than a six or seven, and on his really bads [sic] he gets up to a nine or even a ten.
>
> He cannot posturally get comfortable for more than 15 to 30 minutes continuously sitting, standing or walking.
>
> His sleep is poor.  He awakes often during the night.
>
> He just really spends most of his time trying to deal with and alleviate his pain.
>
> That usually during the day between 8:00 to 5:00 that he will lay [sic] down at lease [sic] two to three hours, not all at one time, but

at various times during the day on the sofa or the recliner to try to alleviate his pain.

(R. 409-10). The attorney then asked Dr. Campbell whether "in substance, is that consistent with the history he's been giving to you?" (R. 410). Dr. Campbell responded:

> Yeah. I think you've hit the nail on the head with it. And I'd want to kind of emphasize the combination of those two injuries in that both of them -- that both of those problems relate to being able to stand, walk, you know, bear weight, lift, carry, that sort of thing because there's [sic] sort of like serial injuries.

(R. 410-11). This testimony forms the basis of Sutherland's contention that the ALJ improperly rejected Dr. Campbell's opinion about Sutherland's functional limitations.

To determine how much weight to give Dr. Campbell's opinion, the ALJ had to consider several factors, including whether Dr. Campbell (1) had examined Sutherland; (2) had a treating relationship with Sutherland; (3) presented medical evidence and explanation supporting the opinion; (4) provided an opinion that is consistent with the record as a whole; and (5) is a specialist. *See* 20 C.F.R. § 416.927(c). Because Dr. Campbell is a treating physician, the ALJ must give "controlling weight" to his opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20

C.F.R. § 416.927(c)(2). Moreover, in this circuit "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id*. Finally, if the ALJ rejects a treating physician's opinion, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error." *Id.*

Here, ALJ correctly applied the law and articulated multiple reasons, all of which are supported by substantial evidence, for giving Dr. Campbell's opinions some, but not controlling weight. (R. 14-15). First, the ALJ found that other medical evidence contradicted some of Dr. Campbell's statements, and pointed out that "Dr. Campbell agreed with [Sutherland]'s attorney that [Sutherland] injured his lumbar spine when he was doing something with a clothes dryer in March 2009," even though "treatment notes of record reflect that [Sutherland] injured his lumbar spine in June 2009 when he was bowling." (R. 14, 150). Second, the ALJ found that Dr. Campbell's own treatment notes undermine his opinions, noting that "Dr. Campbell also agreed with the

attorney's statement that [Sutherland] experiences seven-eight pain level, never really better than a six or seven, even with medication," even though Dr. Campbell's "treatment notes from the *same date* of the deposition reflect [Sutherland] to have stable pain levels between three and six with medication." (R. 15) (emphasis added).  Indeed, on September 6, 2011, during a follow-up visit for his leg and back pain, Dr. Campbell noted that Sutherland's pain was stable and rated between three and six, on a ten-point scale, with prescriptions and activities of daily living, that Sutherland had no daytime sedation or fatigue, and that Sutherland's pain had not changed.  (R. 415).  Finally, the ALJ found that "Dr. Campbell does not state any specific functional limitations [Sutherland] experiences due to his impairments, but merely indicates [Sutherland] has difficulty standing, walking, bearing weight, lifting and carrying."  (R. 15).  Good cause exists to reject a medical opinion when, as here, the opinion failed "to give any specific assessment of [the claimant's] functional capacity."  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th 2005).  As the ALJ correctly observed, the portion of Dr. Campbell's testimony that represents his medical opinions about Sutherland's condition was limited to his statement that

Sutherland's "problems relate to being able to stand, walk, you know, bear weight, lift, carry, that sort of thing."[3] (R. 410-11).

Based on this record, the court finds that the ALJ considered the factors set forth in the regulations, and consistent with the law of this circuit, articulated good cause for giving Dr. Campbell's opinions limited weight: i.e., that Dr. Campbell's opinions were inconsistent with his own treatment notes and the medical evidence from other physicians, and did not specify any specific degree of functional limitation.[4] Because medical opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive controlling weight, 20 C.F.R. § 416.927(c)(2), and because substantial evidence supports the ALJ's findings, the ALJ had good

---

[3] Most of the testimony Sutherland relies on consists of Dr. Campbell's affirmative response to a long leading question recounting Sutherland's reported symptoms. In that question, Sutherland's attorney asked Dr. Campbell whether the description of Sutherland's symptoms he had described was "consistent with the history he's been giving to you?" (R. 410). Dr. Campbell's affirmative response, therefore, indicates only that Dr. Campbell agreed that Sutherland reported those symptoms.

[4] The ALJ also found Dr. Campbell's testimony was rendered less credible because it was given in response to "leading questions discussing a conversation the attorney had with [Sutherland]." (R. 15). The ALJ correctly observed that most of Dr. Campbell's testimony consists of affirmative responses to long leading questions posed by Sutherland's attorney, but did not rely exclusively on that fact, or totally reject Dr. Campbell's testimony. Therefore, the court finds no error in the ALJ's decision to give portions of Dr. Campbell's testimony less weight because it was in response to leading questions, especially in light of Dr. Campbell's agreement with several incorrect statements.

cause for not giving Dr. Campbell's opinions controlling weight, and committed no reversible error.

### B. Consideration of Sutherland's Combined Impairments

Sutherland next contends that the ALJ did not properly consider Sutherland's impairments in combination. Unfortunately, Sutherland's entire argument on this issue consists of his statement that he "has a long medical history reflecting multiple chronic impairments including neuropathy, degenerative disc disease, lumbalgia and obesity," and an assertion that the law requires the ALJ to make "specific and well articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments are disabling." Doc. 9 at 11. Sutherland does not explain how he is limited by his combined impairments, or why the ALJ's RFC finding fails to accommodate such limitations. Therefore, Sutherland has failed to meet his burden of properly presenting this issue for review. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir.2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal."). Alternatively, Sutherland's contention fails because the ALJ properly considered Sutherland's impairments in combination, and specifically found that "none of [Sutherland's]

impairments, either singly or in combination, medically meet or equal the severity requirements of any listed impairment." (R. 12). This finding alone is sufficient to establish that the ALJ considered Sutherland's impairments in combination. *See Jones*, 941 F.2d at 1533 (ALJ's finding that the claimant "does not have 'an impairment *or combination of impairments* listed in, or medically equal to one [in the Listings]'" was sufficient evidence to show the ALJ had considered the combined effect of the impairments) (emphasis in original). Moreover, the ALJ recognized her obligation to "consider all of [Sutherland's] impairments" in assessing his RFC, (R. 11), and there is no indication she failed to do so. Therefore, the court finds that even if this issue is preserved for review, the record shows the ALJ properly considered Sutherland's impairments in combination.

    C.    <u>Obesity</u>

Sutherland argues next that the ALJ failed to address the adverse effect of obesity on individuals with musculoskeletal impairments. Doc. 9 at 11-12. Unfortunately, Sutherland failed to allege any functional limitations caused by obesity either at the time of his application for disability, (R. 103), or at his ALJ hearing. (R. 22-52). Therefore, the ALJ was under no obligation to investigate or consider whether Sutherland's obesity caused functional limitations. *Street*

*v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (unpublished) (an ALJ is not required to investigate allegations "not presented at the time of the application for benefits and not offered at the hearing as a basis for disability") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). Moreover, before remanding for further development of the record regarding obesity, this court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981). As a result, "although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (unpublished) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Significantly, Sutherland "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Because Sutherland has failed to present any evidence showing he actually has functional limitations caused by his obesity, he has failed to meet his burden of showing the necessary prejudice to warrant a remand.

### D. The ALJ's Credibility Finding

Finally, Sutherland contends that the ALJ failed to properly address his alleged need to lie down and elevate his legs during the workday. According to Sutherland, the ALJ improperly required him to provide objective proof of his pain because the ALJ found that his "alleged need to lie down and to elevate his legs for extended periods . . . is not supported by the objective medical evidence." Doc. 9 at 12. A review of the record undermines Sutherland's contention, and shows that consistent with the pain standard in this circuit, the ALJ found Sutherland's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." *See Holt*, 921 F.2d at 1223. However, the ALJ rejected Sutherland's pain testimony because Sutherland's "statements that his impairments result in disabling symptoms and limitations are not credible." (R. 14). Significantly, the ALJ explained why he did not credit Sutherland's testimony:

> Although [Sutherland] alleges he needs to lie down for a significant portion of each day to reduce pain and swelling, treatment notes of record do not support this allegation. Treatment notes repeatedly reflect that [Sutherland] does not experience daytime sedation or fatigue. *E.g.*, exhibit 3F, pages 10, 12 and 22. With the exception of complaints of swelling after [Sutherland]'s hemilaminotomy, which resolved by September 2009, the record does not contain significant complaints of or findings of lower extremity swelling. In fact, treatment notes reflect findings of no edema. Exhibit 3F, pages 19, 20, 21, 28 & 29.

(R. 16). In other words, the ALJ properly considered inconsistencies between the Sutherland's testimony and the treatment records in assessing his credibility, and there is no indication that the ALJ based her decision on the lack of objective evidence of pain itself. In fact, even though the ALJ did not credit Sutherland's testimony of disabling symptoms, she recognized that Sutherland had some limitations caused by his impairments:

> The undersigned finds, based on the medical evidence of record as described above, [Sutherland]'s impairments could reasonably limit [Sutherland] to sedentary work activity. [Sutherland] takes narcotics based medication for his lumbar pain, as well as Neurontin for his lower extremity numbness. These impairments could reasonably cause [Sutherland] to experience increased levels of pain if he were required to stand or walk for extended periods. He also could reasonably experience back pain symptom exacerbation if he were required to frequently climb, crouch, crawl or kneel. However, the evidence of record does not support a finding that [Sutherland]'s impairments are as severe as to prevent him from sustaining sedentary work activity, with limited postural activities.

(R. 16). The court finds that substantial evidence supports the ALJ's determination that these restrictions account for Sutherland's symptoms. Accordingly, because this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Sutherland is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 31st day of July, 2014.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE